```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
MELODY VASQUEZ O/B/O A.T.R., a minor,           :
                                                :
                                    Plaintiff,  :
                                                :      MEMORANDUM & ORDER
                  -against-                     :
                                                :      16-cv-4791 (ENV)
ANDREW M. SAUL, Commissioner of Social          :
Security,¹                                      :
                                                :
                                    Defendant.  :
-------------------------------------------------------------- x
```

VITALIANO, D.J.

Plaintiff Melody Vasquez requests review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act") on behalf of her minor child, A.T.R. The parties have cross-moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The Commissioner concedes that the decision of the administrative law judge ("ALJ") contains multiple legal errors and cannot stand. The parties disagree, however, as to the ultimate disposition of this review. The Commissioner argues that the case should be remanded for further proceedings. Vasquez argues for remand solely for the purpose of calculating benefits. For the reasons set forth below, the Commissioner's cross-motion seeking remand for further proceedings is granted and Vasquez's motion to remand solely for calculation of benefits is denied.

---

[1] Because Nancy A. Berryhill was sued only in her official capacity, Andrew M. Saul, who became the Commissioner of Social Security on June 17, 2019, is automatically substituted for Berryhill as the named defendant. *See* Fed. R. Civ. P. 25(d). The Clerk of Court is directed to amend the caption in this case as indicated here.

Procedural History

Vasquez filed an application for SSI on behalf of A.T.R. on February 9, 2011. Administrative Transcript ("R."), Dkt. 17, at 251–57. She claimed that A.T.R. was disabled because of Legg-Calve-Perthes[2] disease and asthma. R. at 276. The Social Security Administration ("SSA") denied her application on June 28, 2011. *Id.* at 117–21. Vasquez then requested a hearing by an Administrative Law Judge. *Id.* at 123. The hearing was held on November 22, 2011, before ALJ David Z. Nisnewitz. *Id.* at 71. In a decision dated March 28, 2012, ALJ Nisnewitz found that A.T.R. was not disabled within the meaning of the Act. *Id.* at 93. On June 17, 2013, the Appeals Council vacated the hearing decision and remanded the case, finding that the record failed to document that certain post-hearing evidence was proffered, and that further development of a treating physician's evaluation was necessary to determine A.T.R.'s disability.[3] *Id.* at 111. On November 4, 2014, Vasquez and A.T.R. appeared with counsel and testified before ALJ Margaret Pecoraro at an administrative hearing. *Id.* at 37. ALJ Pecoraro issued a decision denying A.T.R. as eligible to receive benefits on March 4, 2015. *Id.* at 16. On June 29, 2016, the Appeals Council denied Vasquez's request for review, thereby rendering the ALJ decision the Commissioner's final decision in the matter. *Id.* at 1–3. A.T.R.

---

[2] In review, Legg-Calves-Perthes disease is a childhood disease in which blood flow to the ball of the hip is cut off. The disease has 4 stages: stage 1 is initial necrosis where the bone does; stage 2 in which the bone dies over a period of 1-3 years and is replaced initially with softer bone, stage 3 in which there is reossification of the bone which becomes stronger; and stage 4 of healing in which the bone has reached its final shape and further surgery might be necessary depending upon the level of deformity with which the bone grew back. *See* Am. Acad. of Orthopedic Surgeons, *Perthes Disease*, OrthoInfo (Oct. 2019); https://orthoinfo.aaos.org/en/diseases--conditions/perthes-disease.

[3] By notice dated March 24, 2014, the Appeals Council acknowledged Vasquez's request and eligibility for relief, pursuant to the settlement in the *Padro v. Astrue*, 11-cv-1788 (CBA) (RL), class action lawsuit, and it remanded the case for further administrative proceedings to an ALJ who was not named in the class action. R. at 114.

filed this action on August 26, 2016.

## Background

  A.T.R. was born on September 8, 2003. *Id.* at 251. She was first diagnosed with Legg-Calve-Perthes disease of the left hip when she was about four years old. *Id.* at 366. According to Dr. Joshua Hyman, M.D., who examined A.T.R. for purposes of providing an opinion concerning her Legg-Calve-Perthes disease, A.T.R. reported pain when she walked more than a few blocks or climbed stairs with her heavy backpack. *Id.* at 764. She walked with a slightly Trendelenburg gait and had a 0.5cm leg length discrepancy with the left leg shorter than the right leg. *Id.* She had limited range of motion in the left hip. *Id.* In addition, an X-ray of her pelvis and legs showed advanced Legg-Calve-Perthes of her left hip. *Id.* Dr. Hyman assured her that she had a "fairly well-preserved joint space of the left hip." R. at 765. He approved of activities such as attending the gym and indicated that A.T.R. needed to stay active with low impact activities. *Id.* Specifically, A.T.R. was to participate in gym but instructed to avoid higher impact activities. *Id.*

  A.T.R. testified at the hearing on November 4, 2014. *Id.* at 42. According to A.T.R., she went to the gym four days a week and was able to run for two or five minutes before her legs started to hurt, depending on how she felt. *Id.* at 44. She could not do jumping jacks, curl-ups, or sit-ups, and could not play volleyball or basketball. *Id.* A.T.R. stated that she used a wheelchair each time she went to the mall "because [her] leg [would] start hurting," and that she often chose not to go to the mall with her friends. *Id.* at 45–46. She told the ALJ that she used the elevator about four times per week in the morning but did not do so in the middle of the day. *Id.* at 47–48. Even though she lived only two blocks from her school, she could not walk to school without pain. *Id.* at 50. She limped and walked slowly, and she could not sustain walking for two blocks or walk on uneven surfaces. *Id.* at 51–52. A.T.R. used a cane, often when she

was going to spend the day in the clinic, and otherwise, A.T.R. was "home-bodied." *Id.* at 52–53. Often, A.T.R.'s pain was so severe that she got up in the middle of the night and cried, and painkillers did not relieve her pain. *Id.* at 54. She also testified she could not stand for long periods of time and was not able to complete age-appropriate tasks for herself such as serving herself a bowl of cereal. *Id.*

      A.T.R. has also suffered from asthma. *Id.* at 366. Her asthma has led to multiple emergency room visits, as well as her staying home from school for treatment with Albuterol and Prednisone administered by her mother. *Id.* at 55. As a result of both A.T.R.'s Legg-Calve-Perthes disease and asthma, A.T.R. missed many days of school—specifically, 35 days for the 2009–2011 school year; 34 days for the 2011–2012 school year; 28 days for the 2012–2013 school year; and 30.5 days for the 2013–2014 school year. *Id.* at 769.

      A.T.R.'s inability to move around and her constant eating contributed to obesity. *Id.* at 699. Her weight placed her beyond the 99th percentile for age and height. *Id.* She was advised, as part of the plan of care, to continue to participate in dance club and play with Wii Fit and Just Dance games at home for increased physical activity. *Id.* at 700. Obesity exacerbated stress on A.T.R.'s hip and impacted her level of pain and mobility. *Id.* at 768.

      Also in the record before the ALJ was A.T.R.'s treatment history. On August 13, 2010, Dr. Andrew Price, M.D., an orthopedic surgeon, performed an adductor longus tenotomy of A.T.R.'s left hip. *Id.* at 490. Dr. Price stated in a letter dated September 13, 2010—one month after A.T.R.'s surgery—that A.T.R. was to (1) refrain from jumping, strenuous running or using stairs if more than one flight, and, (2) use the school elevator for any class changes greater than one flight of stairs until further notice. *Id.* at 418. Approximately 40 days after A.T.R.'s surgery, Vasquez reported to physicians at New York Presbyterian Hospital that A.T.R. received

4

physical therapy twice a week, walked with no crutches, but used a wheelchair if she needed to travel long-distance. *Id.* at 531. In a consultative pediatric examination with Dr. Thomas Depaola, M.D. on June 20, 2011, Vasquez reported that A.T.R. "[could] not take gym or do stairs," and that she had an elevator pass in school. Vasquez stated that A.T.R. had "a para in school to help her," and that she was picked up by the school bus right in front of her house. *Id.* at 398.

On February 7, 2011, Dr. Feldman, an orthopedic surgeon, performed an intraoperative arthrogram on A.T.R.'s left hip. *Id.* at 483. He noted flattening of the femoral head but believed that it was just an incongruity and that it did not need to be corrected. *Id.* The record reflects that A.T.R. has not undergone any further surgery since then, but she has been treated with ongoing physical therapy. *Id.* at 764. Dr. Feldman opined in an undated letter that A.T.R.'s Legg-Calve-Perthes Disease was chronic and had no prognosis to improve. He noted that A.T.R.'s diagnosis caused ongoing bouts of severe pain. *Id.* Dr. Feldman further stated that the pain makes it difficult to walk unassisted for more than a block or so, and that walking on uneven surfaces creates even more difficulty. *Id.* He opined that A.T.R. could not climb stairs or ambulate at a reasonable pace, could not run or jump, and could not travel independently to or from school. *Id.* Moreover, Dr. Feldman opined in an August 25, 2015 letter that A.T.R. often experienced extreme and chronic pain that often impacted her ability to ambulate at a reasonable pace. *Id.* at 768. He also noted that A.T.R.'s obesity caused more weight on her hip and impacted her level of pain and mobility. *Id.*

On June 20, 2011, Dr. Depaola conducted a consultative pediatric examination. *Id.* at 398–402. Relevantly, Dr. Depaola noted that A.T.R. had out-toeing of her left foot and pronation of her left foot when she walked, could walk on heel and toes, and walked with a mild

5

limp, and that her muscle tone was normal for her age with no spasticity. *Id.* at 400–01. When she was in a supine position on the examining table, her left lower extremity was rotated outward so that her foot was at a 45-degree angle. Her right lower extremity had outward rotation so that her right foot had made an angle of 10-to-15 degrees. *Id.* The range of motion in the joints was within normal limits and her motor strength was full (5/5) in the arms and legs. *Id.* Dr. Depaola opined that A.T.R. had limits on physical activities due to her hip impairment. R. at 400. On June 28, 2011, Dr. SanJose-Santos, M.D., reviewed the medical evidence in the record and concluded that A.T.R.'s impairments were severe but did not meet or equal the listed impairments. *Id.* at 412. Dr. Santos also determined that A.T.R. had less than marked limitations in both the domain of moving about and manipulating objects and the domain of health and physical wellbeing. *Id.* at 415.

On September 17, 2014, Dr. Steven Toustsouras, M.D., conducted a consultative pediatric examination. *Id.* at 550–54. Dr. Toustsouras noted that A.T.R. became short of breath when exercising. *Id.* at 554. She did not need help getting on and off the examination table. *Id.* at 552. She could not run and skip normally for her age. *Id.* Examination of the extremities, spine, musculoskeletal systems were normal. *Id.* at 553. Dr. Toustsouras opined that A.T.R. walked with a limp, was unable to run, and had great difficulty in climbing stairs. *Id.* at 554. He also noted that A.T.R. could walk up to two blocks without pain. *Id.*

I.  The ALJ's Determination

The ALJ first concluded that A.T.R.'s impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22. ALJ Pecoraro based her determination on the opinion of Dr. Abby J. Greenberg, M.D., SSA's medical expert, who testified that A.T.R. did not show an inability to ambulate effectively. The ALJ recited Dr. Greenberg's assessment of evidence concerning A.T.R.'s ability to walk at least a block or use

6

standard public transportation.⁴  *Id.*

In addition, she found that A.T.R. did not have an impairment or combination of impairments that functionally equaled the severity of the listed impairments pursuant to 20 C.F.R. §§ 416.924(d) and 416.926a.  *Id.* at 22.  Though the ALJ agreed that A.T.R. had a marked limitation in the domain of moving about and manipulating objects, she found that A.T.R. does not have a marked limitation in any other domain.  *Id.* at 25–31.  In particular, the ALJ concluded that A.T.R. has a less than marked limitation in the domain of health and physical well-being.  *Id.* at 30–31.  The ALJ considered the cumulative physical effects of physical and mental impairments—including both asthma and Legg-Calve Perthes disease—and found that A.T.R.'s recorded absences did not meet the standard for a marked limitation in this domain.  *Id.* at 31.  Separately, cited in support of this conclusion was the ALJ's finding that A.T.R.'s medical and school records did not show her exacerbations were present for 42 or more days a year.  *Id.*

In making the determination that A.T.R.'s impairments did not medically or functionally equal one of the listed impairments, the ALJ afforded great weight to Dr. Greenberg's assessment because of Dr. Greenberg's medical specialty, her familiarity with the Social Security Disability program, and her opportunity to review the entire record and listen to the testimony.  *Id.* at 31.  The ALJ also gave great weight to the findings of Dr. Hyman since he, as a treating physician, conducted a thorough examination and obtained an X-ray of the bilateral hips.  *Id.*

---

⁴ For example, the ALJ cited Dr. Greenberg's observation that "there [was] testimony that the claimant on occasion ha[d] to use one cane but not two canes," R. at 30; that "[t]here [was] testimony that the claimant [could] walk at least a block and that she tires after two blocks," *id.*; and that, "[i]n response to questions posed by the undersigned the claimant [had] . . . taken the bus to the mall twice and use[d] a cab for the other times they [went] to the mall." *Id.* at 30–31. ALJ Pecoraro also noted that at a consultative examination on June 20, 2011, A.T.R. reported she was picked up by a school bus in front of her house.  *Id.*

7

The ALJ accorded some weight to the opinion of Dr. Depaola (1) because much of his recitation of A.T.R.'s medical history and limitations appeared to be based on information obtained from A.T.R. and her mother, and (2) because his medical source statement was non-specific. *Id.* at 32. The ALJ gave some weight to the opinion of Dr. Tsoutsouras because his statement of limitation was vague. *Id.* Notably, ALJ Pecoraro did not address or indicate how much weight she gave to the opinions of treating physicians Dr. Price and Dr. Feldman, *id.* at 22–32, a failure that lies at the nub of this controversy.

II.     Standard of Review

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse or modify it "with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g); *see Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). When evaluating a determination by the Commissioner to deny a claimant disability benefits, a reviewing court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)). Here, the parties agree that, because of substantial legal error, the determination of the ALJ cannot stand. The issue presented for decision is the nature of the remand.

For the Commissioner's findings, a reviewing court has two options for remand. *McClain v. Barnhart*, 299 F. Supp. 2d 309, 324 (S.D.N.Y. 2004). "If there are gaps in the administrative record or the ALJ has applied improper legal standards, the court will remand the case for further development of the evidence." *Id.*; *see also Marcus v. Califano*, 615 F.2d 23 (2d

8

Cir. 1979) (remanded for reconsideration because subjective evidence of disabling pain, if credited, may support a finding of disability). "If, however, the record provides 'persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose,' the court may reverse and remand solely for the calculation and payment of benefits." *McClain*, 299 F. Supp. 2d at 324 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)); *see also Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (holding that remand solely for calculation of benefits is appropriate where record "compel[s] but one conclusion under the substantial evidence standard").[5]

Discussion

The Act provides that an individual under the age of 18 is considered disabled under the Act if she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *Kittles ex rel. Lawton v. Barnhart,* 245 F. Supp. 2d 479, 487 (E.D.N.Y. 2003). Further, although not in dispute in this case, an individual under the age of eighteen who "engages in substantial gainful activity" is not eligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii).

For a claimant under the age of eighteen to be found disabled, the Act requires an ALJ to conduct a three-step sequential analysis finding each of the following: (1) that the claimant is not engaged in substantial gainful activity; (2) that the claimant has a medically determinable impairment or a combination of impairments that is "severe" (i.e., the impairment or

---

[5] Under the substantial evidence standard, "once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis and quotation marks omitted).

9

combination of impairments cause more than a minimal functional limitation); and (3) that the impairment or combination of impairments either meets, or is equivalent to, a disabling condition identified in the listing of impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Jones ex rel. T.J. v. Astrue,* No. 07-cv-4886, 2010 WL 1049283, at 5 (E.D.N.Y. Mar. 17, 2010); *Kittles,* 245 F. Supp. 2d at 488; *see also* 20 C.F.R. § 416.924(b)–(d). Equivalence to a listed impairment may be medical or functional. *See Jones ex rel. T.J.,* 2010 WL 1049283; *Kittles,* 245 F. Supp. 2d at 488; *see also* 20 C.F.R. § 416.924(d). Relevant here is the listed musculoskeletal system impairment. 20 C.F.R. Part 404, Subpt. P, App. 1, Part A § 1.00.

Analysis of functional equivalence requires the ALJ to assess the claimant's functional ability in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1). The six domains—(i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for oneself, (vi) health and physical well-being—are "broad areas of functioning intended to capture all of what a child can or cannot do." *Id.* Functional equivalence is established when the ALJ finds that the claimant has a "marked limitation" in two domains or an "extreme limitation" in one domain. 20 C.F.R. § 416.926a(a).

A "marked limitation" is one that seriously interferes with a claimant's ability to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate," but "less than extreme." *Id.* An "extreme limitation" is one that "very seriously interferes" with a claimant's ability to independently initiate, sustain, and complete activities. 20 C.F.R. § 416.926a(e)(3). It is designated for the "worst limitations . . . . but does not necessarily mean a total lack or loss of ability to function." *Id.* § 416.926a(e)(3)(i). Here, the relevant listed impairments fall into two of the six domains: moving about and manipulating objects, and health

10

and physical well-being.  The impairments which cause such limitations are A.T.R.'s asthma, Legg-Calve-Perthes disease and obesity.

The moving about and manipulating objects domain focuses on the child's fine and gross motor skills both as to how the child can physically move him or herself from one place to another as well as how well he or she can move and manipulate objects.  20 C.F.R § 416.926a(j). Unimpaired school-aged children (between ages 6 and 12) without an impairment should be able to move at an efficient pace about their school, home and neighborhood.  They should have increasing strength and coordination which expands their ability to enjoy a variety of physical activities such as running and jumping; and throwing, catching, hitting and kicking balls in informal play or organized sports.  They should also be developing fine motor skills which enable them to do things like use kitchen and household tools independently, use scissors and write.  20 C.F.R § 416.926a(j)(2)(iv).  Examples of limitations in the domain of moving about and manipulating objects include muscle weakness, joint stiffness, or sensory loss that interferes with motor activities (for example, unintentionally dropping objects); trouble climbing up and down stairs, jerky or disorganized locomotion, or difficulty with balance; trouble coordinating gross motor movements (for example, bending, kneeling, crawling, running, jumping rope, or riding a bicycle); difficulty with sequencing hand or finger movements (for example, using utensils or manipulating buttons); difficulty with fine motor movements (for example, gripping and grasping objects); and poor eye-hand coordination when using a pencil or scissors.  Social Security Ruling, SSR 09-6p.; Title XVI: Determining Childhood Disability—The Functional Equivalence Domain of "Moving About and Manipulating Objects," 74 Fed. Reg. 7518 (Feb. 17, 2009).

The health and physical well-being domain considers the physical and mental effects of

physical or mental impairments and their treatment or therapies on the child's functioning which were not considered in the domain of moving about and manipulating objects.  This domain considers how physical effects make it difficult for the child to perform activities effectively and independently due to such problems as generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infections, poor growth, bladder or bowel incontinence, or local or generalized pain.  This domain considers the effects of medications and treatments, such as multiple surgeries, as well as how the child functions during periods of worsening of symptoms, how often those periods occur and how long they last.  20 C.F.R. at § 416.926a(l).  Additional effects that should be considered in this domain include changes in weight or eating habits, stomach discomfort, nausea, seizures or convulsive activity, headaches, or insomnia.  *See* 20 C.F.R. § 416.926a(l); SSR 09-8p: Title XVI: Determining Childhood Disability—The Functional Equivalence Domain of "Health and physical well-being", 74 Fed. Reg. 7524 (Feb. 17, 2009).  A child will be considered to have a marked limitation in this domain if she is frequently ill due to her impairment or has frequent exacerbations that result in significant, documented symptoms or signs, meaning either that such episodes of illness or exacerbations occur on average of once every four months, lasting 2 weeks or more, or "if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity."  20 C.F.R. § 416.926a(e)(2)(iv).  The limitation may be considered "extreme" if such episodes or exacerbations are "substantially in excess of the requirements for showing a 'marked' limitation."  *Id.* § 416.926(e)(3)(iv).

Building on this framework, Vasquez contends that the record supports a finding of A.T.R.'s eligibility for SSI benefits, and that, furthermore, the ALJ committed multiple errors of law which include failing to find that A.T.R.'s condition is the equivalent to the listed

impairment of a musculoskeletal system disorder, either because (1) she suffers from a marked limitation in two domains; or (2) because she suffers an extreme limitation of one domain; and, in any event, she contends, A.T.R.'s inability to ambulate meets a listed musculoskeletal impairment. *See generally* Dkt. 28, Pl.'s Mem. The Commissioner concedes that the ALJ did not consider or weigh the opinions of two treating sources, Dr. Price and Dr. Feldman, did not fully evaluate the testimony of Vasquez and A.T.R. for credibility, and did not properly evaluate the domain of health and well-being. Dkt. 30, Comm'r's Cross-Mot. Mem., at 21–23.[6] And, although he argues the record does not support a finding of disability, he nevertheless argues that remand is appropriate in light of the conceded errors. *Id.*

Fully crediting the Commissioner's concession, remand solely for the calculation of benefits, nonetheless, is inappropriate on this record. A reviewing court may remand solely for the calculation of benefits when "the claimant has presented substantial evidence of disability and the Commissioner, after full development of the record, has failed to carry his evidentiary burden to show otherwise." *McClain*, 299 F. Supp. 2d at 328–29 (citations omitted) (describing remanding for further proceedings as the "usual remedy"). Notably, a calculation-only remand is appropriate when the record must "provide[] persuasive evidence . . . that render[s] any further proceedings pointless." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999); *see F.M. v. Astrue*, 2009 WL 2242134, at *11 ("To remand the case for further consideration would be futile, as the only conclusion supported by the record evidence is that B.M. suffers a marked limitation in two domains, and is therefore disabled pursuant to the Commissioner's regulations."). A.T.R. has set forth three separate arguments as noted above, but none prevail. Instead, with regard to each, a proper analysis requires a further development of the record. *See Veino v. Barnhart*, 312 F. 3d

---

[6] All citations to pages refer to the Electronic Case Filing System ("ECF") pagination.

13

578, 588 (2d Cir. 2002) ("[G]enuine conflicts in the medical evidence are for the Commissioner to resolve.").

As to Vasquez's first argument, although the ALJ found that A.T.R. has a marked limitation in the domain of moving about and manipulating objects, Vasquez argues the record also supports A.T.R. as having a marked limitation in the domain of health and physical well-being. Pl.'s Mem. at 14–15. In support, Vasquez calls attention to A.T.R.'s school records, which report A.T.R. as having been absent for an average of 38 days per year of school between 2007 and 2014, and it should be assumed that A.T.R. had exacerbations of her condition on weekends as well, for at least 42 days per year. *Id.*; Dkt. 31, Pl.'s Reply, at 6. Such absences, she argues, evidence "frequent" exacerbations that have led to A.T.R.'s incapacitation for more than six weeks per year. *Id.*; Pl.'s Reply, at 4–9. Although perhaps a fair inference to draw, it is by no means the *only* inference. However, the Commissioner's argument—that A.T.R. has not documented 42 days of school absences and that illness must be documented pursuant to the regulation, Dkt. 30, Comm'r's Cross-Mot., at 21–22,—is equally flawed insofar as he seems to demand that all exacerbations are documented by both medical evidence and a school absence, which is not required by a plain reading of 20 C.F.R. § 416.926a(e)(2)(iv). The medical records support that there were "frequent exacerbations" which caused school absences but did not specify whether those absences would equal or be equivalent to 6 weeks per year. Therefore, a clear gap exists in the medical records that must be resolved.

Furthermore, as the Commissioner concedes, the ALJ's credibility finding as to Vasquez was insufficient. *See* Comm'r's Cross-Mot., at 30. Not only do A.T.R.'s school records depict Vasquez as an involved parent, diligent in obtaining special education and other services for A.T.R., Vasquez herself testified that A.T.R.'s absences were due to her medical condition. *See*

14

Pl.'s Mem., at 27; R. at 58. On remand, the ALJ should query the treating physicians with regard to the issue, direct Vasquez's counsel to obtain a statement from the treating physicians with regard to the issue, or otherwise fill the gaps in the record, including more thorough findings as to Vasquez's credibility. In addition, as the Commissioner concedes, the ALJ should also assess the effects of A.T.R.'s impairments not considered under the domain of moving about and manipulating objects. *See* Comm'r's Cross-Mot. Mem., at 22–23.

Second, Vasquez argues the ALJ erred by failing to find A.T.R. had an extreme limitation in the domain of moving about and manipulating objects, as the record reflects that A.T.R. is largely confined to her home, cannot walk even short distances without pain, and cannot run, jump, or play. Pl.'s Mem. at 27–28. By citing only Dr. Greenberg, and not A.T.R.'s or Vasquez's testimony, Vasquez argues, the ALJ ignored critical evidence in the record. *Id.* at 28. The Commissioner agrees to the extent that the ALJ did not consider or weigh the opinions of either Dr. Price or Dr. Feldman, who treated A.T.R. and who reported the limitations in her mobility, nor was her credibility analysis of Vasquez or A.T.R. sufficient. Comm'r's Cross-Mot. Mem. at 21–22. Accordingly, to remedy these analytical shortfalls, on remand, the ALJ is directed both to consider the testimony of A.T.R.'s treating physicians in determining whether A.T.R. had an extreme limitation in the domain of moving about and manipulating objects, and to fully evaluate the testimony of Vasquez and A.T.R.

Finally, remand is appropriate because of the shortcomings in the ALJ's analysis as to whether A.T.R. met a listed musculoskeletal system impairment. Vasquez contends that she has proven that A.T.R. is unable to effectively ambulate, as she is unable to engage in age-appropriate activity. In support, she cites the exam notes from Dr. DePaola, Dr. Toustsouras, and Dr. Hyman, as well as the September 2011 and August 2015 letters from Dr. Feldman and

15

admissions notes prior to her February 2011 procedure that she "[w]alks occasionally during day but for very short distances, with or without assistance; spends majority of each shift in bed/chair." Pl.'s Mem. at 23–24. She also argues her and A.T.R.'s testimony corroborates her medical records. *Id.* at 24. Rather than relying on any of this evidence or testimony, she argues, the ALJ instead relied almost exclusively on the testimony of Dr. Greenberg. *Id.* at 25–27; Pl.'s Reply at 12. The Commissioner counters that the ALJ was permitted to consider Dr. Greenberg's opinion in reaching her conclusion, and that even A.T.R.'s own treating physicians' assessments do not establish her disability. Comm'r's Mem. at 23–24. Synergistically, because the ALJ failed to properly develop the record and further failed to properly assess Vasquez's and A.T.R.'s credibility, remand as to this issue is required as well.

## Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings to remand the case for further proceedings is granted and Vasquez's motion to remand solely for calculation of benefits is denied. The final order of the Commissioner denying benefits is reversed, the decision of the ALJ is vacated, and the matter is remanded for further administrative proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment accordingly and to close this case for administrative purposes.

So Ordered.

Dated: Brooklyn, New York
       April 30, 2020

                                          /s/ Eric N. Vitaliano
                                            ERIC N. VITALIANO
                                            United States District Judge